775 P.2d 1333

Dolores ARMIJO, Individually and as Personal Representative of the Estate of James Fray Saulsberry, and as next friend of Erin Armijo Saulsberry, a minor, Plaintiff–Appellant,

v.

The DEPARTMENT OF HEALTH AND ENVIRONMENT of the State of New Mexico, Defendant–Appellee.

No. 10164.

Court of Appeals of New Mexico.

May 23, 1989.

Tanya L. Scott, Ortega and Snead, P.A., Albuquerque, for plaintiff-appellant.

Clifford M. Rees, Sp. Asst. Atty. Gen., Office of General Counsel, Health and Environment Dept., Santa Fe, James P. Lyle, Butt, Thornton and Baehr, P.C., Albuquerque, for defendant-appellee.

OPINION

MINZNER, Judge.

Plaintiff appeals the trial court's grant of summary judgment in favor of defendant Health and Environment Department (HED). Plaintiff raises two issues of first impression under the New Mexico Tort Claims Act (the Act), NMSA 1978, Sections 41–4–1 to 41–4–29 (Repl.1986 & Cum.Supp. 1988).[1] These are: (1) whether, by virtue of an extensive regulatory scheme, HED employees are public employees who "operated" a community mental health facility within the meaning of Section 41–4–9; and (2) whether the employees of the facility are themselves public employees who provided health care services within the meaning of Section 41–4–10, because the facility was an agent of the state. We answer these issues by holding, first, that HED does not operate the community mental health facility in this case within the mean-

---

1. The Tort Claims Act, as it existed at the time this suit was filed, see N.M. Const. art. IV, § 34, is found in the 1986 replacement pamphlet. Unless otherwise noted, all citations in this opinion are to the Act as it appears in that pamphlet. With one exception, which is noted in the opinion, the statutes relevant to this appeal have not changed since the suit was filed.

ing of Section 41–4–9; and second, the facility and its employees are independent contractors and not public employees, and therefore Section 41–4–10 does not provide waiver of immunity. We affirm.

Plaintiff is Dolores Armijo, the sister of Steven Armijo. Steven was a voluntary resident of defendant Border Area Mental Health Center (Border Area) transitional living unit and a patient at Border Area's outpatient clinic. During Easter of 1983, Border Area wanted to close for the holidays and arranged transportation for Steven to spend the holidays with Dolores. While there, Steven shot and killed his brother-in-law and assaulted Dolores and her daughter.

Dolores sued Border Area, its owners and employees, and HED. As against Border Area and its owners and employees, plaintiff alleged they should not have accepted Steven into their voluntary facility knowing that he was a danger to himself and others; having accepted him, they should not have allowed him to leave for the weekend for the same reasons; and having allowed him to leave, they should have warned plaintiff of his danger to others. As against HED, plaintiff alleged it did not properly supervise Border Area and it should have, by regulation, required more comprehensive intake procedures to render proper diagnosis. HED was granted summary judgment on the ground that there was no relevant waiver of immunity within the Act. The claims against Border Area and its owners and employees are still pending. Plaintiff appeals only the dismissal of HED from the suit.

Section 41–4–4(A) provides immunity from tort liability for any governmental entity or public employee, except as that immunity is waived in Sections 41–4–5 through 41–4–12. Plaintiff relies on the waivers contained in Sections 41–4–9 and 41–4–10. These sections provide:

The immunity * * * does not apply to liability for damages * * * caused by the negligence of public employees while acting within the scope of their duties in the operation of any * * * mental institution, clinic, * * * or like facilities.

§ 41–4–9.

The immunity * * * does not apply to liability for damages * * * caused by the negligence of public employees licensed by the state or permitted by law to provide health care services while acting within the scope of their duties of providing health care services.

§ 41–4–10.

Plaintiff's brief extensively and eloquently argues that HED owed her brother a duty of care. Plaintiff particularly urges this court to recognize that the state's duty on these facts was non-delegable. However, we need not reach the issue of duty unless we determine that plaintiff's cause of action is one for which immunity has been waived. *See Pemberton v. Cordova,* 105 N.M. 476, 734 P.2d 254 (Ct.App.1987).

In *Pemberton,* plaintiffs' argument that a statute imposed a duty on the defendant for the specific situation causing the injuries was rejected because there was no relevant waiver of immunity. As stated in *Gallegos v. State,* 107 N.M. 349, 351, 758 P.2d 299, 301 (Ct.App.1987), the Act requires a negligent public employee "who meets one of the waiver exceptions." A particular agency may be held liable for the negligent act or omission of a public employee only if immunity has been waived. *Id.* Thus, the dispositive issues are whether (1) Section 41–4–9 waives immunity for the actions by HED on which plaintiff bases her complaint, or (2) the employees of Border Area are public employees within the meaning of Section 41–4–10.

Insofar as Section 41–4–9 is concerned, plaintiff's argument is that the public employees are the employees of HED who, by virtue of their extensive regulatory scheme, are "operating" Border Area. Insofar as Section 41–4–10 is concerned, plaintiff's argument is that the public employees are the employees of Border Area, who are public employees because Border Area is an agent of the state. We are not persuaded by either argument.

## 618

### 1. Does Section 41-4-9 Provide Waiver of Immunity?

■ With respect to Section 41-4-9, in the context of the Act, our cases narrowly interpret the word "operation." *Adams v. Japanese Car Care,* 106 N.M. 376, 743 P.2d 635 (Ct.App.1987). For example, an initial inspection and approval of a private sewer clean-out is not part of the "operation" of a liquid collection or disposal utility under Section 41-4-8(A). *Id.* The design, planning, and enforcement of safety rules for school bus transportation was not "operation of any motor vehicle" under Section 41-4-5. *Chee Owens v. Leavitts Freight Serv., Inc.,* 106 N.M. 512, 745 P.2d 1165 (Ct.App.1987).

In contrast to the word "operation," the word "maintenance" in the Act has an expansive definition. *See Miller v. New Mexico Dep't of Transp.,* 106 N.M. 253, 741 P.2d 1374 (1987) (maintenance means more than mere physical upkeep; it includes keeping the thing safe for public use); *see also Castillo v. County of Santa Fe,* 107 N.M. 204, 755 P.2d 48 (1988). Nonetheless, the term "maintenance" does not permit us to recognize liability for all activities licensed or inspected by state agencies. *Martinez v. Kaune Corp.,* 106 N.M. 489, 745 P.2d 714 (Ct.App.1987). "The licensing scheme is too pervasive to extend such liability to the state. Imposing such liability would circumvent the very grant of immunity provided by the Tort Claims Act, subject to the specific waivers of immunity." *Id.* at 492, 745 P.2d at 717.

Under *Miller* and *Castillo,* we must interpret the Tort Claims Act waivers of immunity in light of their intended purposes, which are remedial. Nevertheless, there is a significant difference between "regulation" and either "operation" or "maintenance." It follows that the use of the more narrowly construed word "operation" in Section 41-4-9 indicates an intent not to extend liability to all activities licensed or regulated by the state. *See Martinez v. Kaune Corp.*

We also consider it significant that the legislature did not use the word "mainte-nance" at all in Section 41-4-9, as it did in other sections waiving immunity. *Compare* §§ 41-4-5 and -6 (operation or maintenance) *with* § 41-4-11 (maintenance or existence). We conclude that the legislature chose to provide a more limited waiver for the activities of public employees in connection with a mental institution or clinic than it provided for other activities of public employees. We hold, therefore, that Section 41-4-9 does not encompass HED's relationship with Border Area. Section 41-4-9 only applies to the extent that public employees operate a mental institution or clinic, are negligent in such operation, and that negligence causes damages.

Plaintiff contends HED was operating Border Area because of the extensive regulatory scheme. However, plaintiff's allegations of negligence are in the nature of malpractice and failure to warn against Border Area and its employees. The allegations are that HED did not step into the clinical decision-making process of Border Area. None of the regulations purport to direct Border Area in practicing mental health care. Rather, the regulations involve safety, building standards, client eligibility, and extensive requirements of case documentation. The actual clinical decisions about which plaintiff complains, as well as who will make those decisions, were reserved by Border Area.

It is clear that HED did not regulate what is alleged to have caused plaintiff's injuries. In effect, plaintiff argues that HED is "operating" Border Area because it is regulating it but was negligent because its regulations were not extensive enough. Because HED did not regulate the actual clinical decision-making, and because plaintiff's allegations of negligence against HED concern that aspect of Border Area's operation, we hold that Section 41-4-9 does not provide a waiver of immunity.

### 2. Does Section 41-4-10 Provide Waiver of Immunity?

■ With respect to Section 41-4-10, the critical inquiry is whether Border Area em-

ployees are public employees. "Public employee" is defined in Section 41-4-3(E): [2]

E. "public employee" means any officer, employee or servant of a governmental entity, including:

(1) elected or appointed officials;

(2) law enforcement officers;

(3) persons acting on behalf or in service of a governmental entity in any official capacity, whether with or without compensation;

(4) licensed foster parents providing care for children in the custody of [certain state agencies], but not including foster parents certified by a licensed child placement agency;

(5) members of state or local selection panels established pursuant to the Community Corrections Act * * *; and

(6) licensed medical, psychological or dental arts practitioners providing services to the corrections department pursuant to contract. Except as provided by this paragraph, the term does not include an independent contractor[.] [Citations omitted.]

"Governmental entity" means a state or local public body or agency of the state such as a branch, agency, department, board, instrumentality, or institution of the state. § 41-4-3(B), (C), (G).

The legislature has provided that "public employee" does not mean independent contractor, except for certain persons providing services to the corrections department. The second paragraph of the contract entered into between Border Area and HED states:

## 2. STATUS AS INDEPENDENT CONTRACTOR

The CONTRACTOR is an independent contractor under this contract and shall set its own employment and corporate policies, subject to all applicable federal, state, and local employment and corporate laws, rules and regulations. The CONTRACTOR, its employees, and its agents are not to be construed as employees of the State of New Mexico through the performance of services under this contract. * * * The DEPARTMENT may designate the results to be accomplished by the CONTRACTOR, but the CONTRACTOR shall have the right to determine the manner and method by which the results, which are set forth in the Scope of Services of this contract, are attained.

While we agree with plaintiff that statements in a contract describing an independent contractor relationship are not necessarily determinative, such does not change the result here. To.be sure, the documents before the trial court on the summary judgment motion show pages and pages of criteria, regulations, and standards governing how Border Area was to carry out its contract with HED. The department regulates what clients are eligible for services. It extensively regulates the physical plant in terms of heating, ventilation, water, sanitation, electrical work, safety, food, linens, and drugs. It has published standards for governance of community mental health agencies such as Border Area. These standards cover community involvement, data collection, personnel and fiscal management, client rights, quality assurance, and cultural acceptability. The standards include detailed guidelines on client services management, including requirements of case record documentation, treatment plans, and discharge summaries. However, apart from the documentation requirement, the contractor makes actual staffing patterns and treatment decisions.

Plaintiff argues this extensive scheme of regulation makes Border Area an agency of the state so that its employees are public employees providing health care services.

2. This statute has been amended since the suit was filed. *See* § 41-4-3(E) (Cum.Supp.1988). The 1988 amendment added the exclusion that appeared in (6) near the beginning of Subsection (E), deleted the exclusion in (6), and added Subsection E(7). *See* 1988 N.M. Laws, ch. 31, § 1.

Relying on the supreme court's citation in *Silva v. State,* 106 N.M. 472, 745 P.2d 380 (1987), of SCRA 1986, 13–403 (defining "employee" for purposes of the employer-employee relationship) and –409 (noting that corporations can act only through employees), plaintiff in effect contends the term "public employee" encompasses a person or entity whose actions are subject to a certain degree of state regulation. There are two answers to the argument.

First, we do not believe the references to the uniform jury instructions on agency in *Silva* are relevant. *Silva* concerned the question of when a direct action lies against the state and its entities; *Silva* indicates that agency principles are useful in determining when the state and its entities should be joined as defendants. It did not purport to define a governmental entity under the Act.

Governmental entities are specifically defined in the Act, and the definition ordinarily does not include independent contractors. *See* § 41–4–3(E)(1)–(5). It is clear from the statute that the legislature intentionally included certain independent contractors. *See* § 41–4–3(E)(6). The fact it did not include those contracting with the state to provide community mental health programs indicates an intent that employees of such programs are not to be considered public employees. *See Patterson v. Globe Am. Casualty Co.,* 101 N.M. 541, 685 P.2d 396 (Ct.App.1984). Thus, as a matter of statutory interpretation, we believe plaintiff's argument must fail.

Further, the type of regulation at issue in this case does not give the state the right to control the details of the work of Border Area. Thus, we are not persuaded that plaintiff has raised a genuine issue of material fact concerning Border Area's status. We do not believe it is possible to view Border Area as a state agency and its employees as public employees.

While the Federal Tort Claims Act is different than the Act,[3] federal cases are instructive on the question of whether employees of a private corporation contracting with the state under strict and detailed regulation should be viewed as employees of a governmental entity for purposes of imposing vicarious liability on the state. At issue in *United States v. Orleans,* 425 U.S. 807, 96 S.Ct. 1971, 48 L.Ed.2d 390 (1976), was whether a community action program wholly supported and closely supervised by the Office of Economic Opportunity was an "instrumentality or agency of the United States" for purposes of Federal Tort Claims Act liability. The Court distinguished actions taken to insure compliance with the voluminous regulations from the actual supervision of the day-to-day affairs of the program, and held that the program was not an agency of the United States. The fact of extensive regulation of so many businesses and industries would make the exception swallow the rule. Congress could not have intended to make the United States potentially liable for so many individuals, corporations, or activities. Our own case of *Martinez v. Kaune Corp.* contains a similar rationale.

Moreover, our supreme court, in *Cole v. City of Las Cruces,* 99 N.M. 302, 305, 657 P.2d 629, 632 (1983), held that a private corporation (the Association) was not an instrumentality of the municipality under the Act even though it contracted with the City so that "the City was 'to solely operate and maintain the Association's * * * system,' " and had " 'the right to supervise, direct and control the employees of the Association.' " *Cole* would appear dispositive of plaintiff's claims in this case. However, *Cole* is made somewhat difficult to

---

3. The federal Act covers injuries "caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant." *See* 28 U.S.C. § 1346(b) (1982). The Act defines government employees to "include officers and employees" of any federal agency and defines "federal agency" to include "corporations primarily acting as instrumentalities or agencies of the United States" but to exclude "any contractor with the United States." *See* 28 U.S.C. § 2671 (1982).

understand by the recitation of the procedural posture of that case.

When a supreme court opinion is not clear regarding the underlying facts or considerations, it is appropriate for this court to review the supreme court records. *See State v. Grubbs*, 85 N.M. 365, 512 P.2d 693 (Ct.App.1973). The supreme court records reveal that the judgment for defendants in *Cole* was not a final judgment absolving defendants of liability. Rather, the trial court had ruled that the Act's damage cap applied to both the City and the Association.

In *Cole*, the plaintiff argued in issue 1 that the City's operation of the natural gas system outside the five-mile statutory boundary meant that the operation fell outside the governmental immunity the Act provides. The supreme court disagreed, noting that the City was still acting in its capacity as a governmental entity, and thus the damage cap was applicable to the plaintiff's action against the City. In issue 3, the City argued alternatively that its operation of the pipeline in violation of the five-mile statutory boundary meant that the operation was beyond its authority. Therefore, the City argued it was not liable at all under the Act. The supreme court again disagreed, stating that the City could not control and accept the benefits of the pipeline, and then claim it was shielded from liability because the operation was ultra vires.

In issue 2, the trial court had ruled that the Association was an instrumentality of the City such that the damage cap applied to it also. Plaintiff argued that the Association was not an instrumentality of the City. The supreme court agreed because the Association was a private corporation, even though the City totally directed its operation insofar as the gas system at issue was concerned. If the Association was not a government instrumentality in *Cole*, Border Area is not an instrumentality of HED in this case.

We recognize that the plaintiff in *Cole* acquired the right to sue the Association as a result of the court's determination that the Association was not an instrumentality of the City. In this case, plaintiff is precluded from suing the state as the result of a determination that Border Area is not an instrumentality of the state. We do not believe this difference is relevant.

*Conclusion.*

Therefore, notwithstanding the detailed regulations, we hold that HED was not operating Border Area, insofar as plaintiff's allegations of negligence are concerned. We further hold that Border Area is not an agency of the state for purposes of the Tort Claims Act, nor are its employees public employees. The trial court was correct in granting defendant HED summary judgment. We deem oral argument unnecessary in this case.

Accordingly, that judgment is affirmed.

IT IS SO ORDERED.

BIVINS, C.J., and ALARID, J., concur.