827 P.2d 1306

Nancy CAILLOUETTE, Personal Representative of the Estate of Latha Caillouette, Jr., Deceased, Plaintiff–Appellant and Cross–Appellee,

v.

HERCULES, INC., a Delaware corporation, Tri–State Motor Transit Company, Inc., a Delaware corporation, Defendants,

and

Arthur Archibeque, Lieutenant in the New Mexico State Police and the New Mexico Department of Public Safety, Defendants–Appellees and Cross–Appellants.

No. 12464.

Court of Appeals of New Mexico.

Jan. 17, 1992.

Certiorari Denied Feb. 18, 1992.

OPINION

MINZNER, Judge.

Plaintiff appeals the directed verdict granted to Defendants Archibeque and the Department of Public Safety (Department) (collectively Defendants) in her action for wrongful death, and Defendants have cross-appealed the denial of motions for judgment on alternative grounds. Plaintiff asks us to reverse the trial court's decision that the New Mexico Tort Claims Act does not contain a relevant waiver of immunity. She relies on NMSA 1978, Sections 41–4–5, –6, and –12 (Repl.Pamp.1989). Issues raised in the docketing statement but not briefed are deemed abandoned. *State v. Fish*, 102 N.M. 775, 701 P.2d 374 (Ct.App. 1985). Defendants ask us to hold that the trial court erred in denying the Department judgment on the alternative ground that it did not receive timely notice of Plaintiff's claim as required by NMSA 1978, Section 41–4–16 (Repl.Pamp.1989), and in denying Defendants judgment on the alternative grounds that there was no violation of any duty owed Plaintiff's decedent, and there was a lack of proximate cause. Because several relevant opinions were filed by both the supreme court and this court while this case was pending on appeal, we requested supplemental briefs and also heard oral argument. We now affirm on the ground that none of the three sections on which Plaintiff relies provides a waiver of immunity for the claims she has stated. We do not address the issues raised by the cross-appeal.

I.

BACKGROUND.

Jack T. Whorton, Mark Woodard Whorton, Whorton Law Offices, A Partnership, Alamogordo, for plaintiff-appellant and cross-appellee.

Thomas A. Sandenaw, Jr., Weinbrenner, Richards, Paulowsky, Sandenaw & Ramirez, P.A., Las Cruces, for defendants-appellees and cross-appellants.

On May 29, 1987, a truck owned by Tri-State Motor Transit and hired by Hercules, Inc. to transport a load of solid propellant explosives Hercules manufactured, overturned thirty-seven miles north of Alamogordo, New Mexico, on U.S. Highway 54. As a result of the accident, the top of the trailer burst, and many cartons of explo-

sives broke, spilling explosive powder around the inside of the trailer. Someone reported the accident to Lt. Arthur Archibeque, a "state police emergency response officer" under the Emergency Management Act (EMA). *See* NMSA 1978, § 74–4B–5(B) (Repl.Pamp.1990). He went to the accident site. A dispatcher notified Mary Walz, the administrator of the state police emergency response center. *See* § 74–4B–5(C).

The statute requires that once notified the state police emergency center shall:

(1) evaluate and determine the scope of the accident based on information provided by the first responder;

(2) instruct the first responder on how to proceed at the accident scene;

(3) immediately notify the appropriate responsible state agency and advise it of the necessary response;

(4) notify the sheriff or chief of police in whose jurisdiction the accident occurred; and

(5) coordinate field communications and summon additional resources requested by the emergency management team.

*Id.* The EMA also provides that:

Nothing in the Emergency Management Act [this article] shall be construed to relieve hazardous materials owners, shippers or carriers of their responsibilities and liability in the event of an accident. Such persons shall assist the state as requested in responding to an accident and are responsible for restoring the scene of the accident to the satisfaction of the state.

NMSA 1978, § 74–4B–10 (Repl.Pamp.1990).

Walz did not testify at trial, but portions of her deposition were read into the record. In those portions she indicated that she believed Archibeque was competent to determine what needed to be done, and because he did not ask for specific directions, she did not give him any. She was not asked whom she notified after she learned of the accident. The record indicates that she and Archibeque communicated through the dispatcher.

Archibeque called a wrecking company and requested several wreckers, another semi-trailer and tractor, and a crew to help clean up the spill. The crew opened the damaged trailer, transferred the unbroken cartons of explosives to the replacement trailer, scooped up as much of the explosive powder as they could, and placed it back in the broken cartons. Archibeque apparently supervised this activity. At his direction, the damaged trailer containing the broken cartons and spilled powder was towed to a wrecker yard in Alamogordo. Archibeque then left the accident site.

Hercules sent a representative to the wrecker yard, who supervised the clean-up of the damaged trailer there. The broken cartons were reloaded into another vehicle without incident and transported back to Hercules' manufacturing plant.

The damaged trailer, still contaminated with powder residue, was moved under Tri–State's direction from the wrecker yard to H & R Automotive Company in Alamogordo a week later. A Tri–State employee supervised its repairs to the trailer. On June 6, 1987, Plaintiff's decedent, an H & R Automotive employee, was using a cutting torch on the roof of the trailer to repair it. The torch ignited the powder residue left in the trailer. Plaintiff's decedent received severe burns and died on June 14.

Plaintiff, as decedent's personal representative, filed a wrongful death action against Tri–State, Hercules, Archibeque, and the Department alleging negligence, nuisance, and strict liability. With respect to Defendants, Plaintiff's complaint alleges negligence at the scene and also after the trailer was moved to Alamogordo.

Plaintiff's complaint describes Archibeque as having:

[3. I]nvestigated the accident, arranged or observed the clean up, viewed or supervised the reloading of the cargo onto

other vehicles. Thereafter, he negligently released the explosives, residue and vehicle back into the possession, actual or constructive, of the Defendant carrier and Defendant shipper, for whatever handling and disposition they chose to make of these hazardous and flammable military explosives. Thereafter, he failed to protect the public from this dangerous nuisance and negligently permitted and allowed this nuisance to be created and continued, contrary to the requirements of due care and the internal rules and regulations and good practice that governed his actions. The officer submitted a written incident report to his superiors in the New Mexico State Police in Alamogordo, and to the New Mexico Department of Public Safety, as to both his actions and omissions. This agency ignored the hazard, still present in Alamogordo, contrary to its own internal rules and regulations, good practice and due care. Ten days later, Plaintiff's decedent was grievously injured and later died, as a result of this negligence, unabated dangerous condition and nuisance. The Defendant, Archibeque, was notified, and the Department of Public Safety was notified of this death by the New Mexico State Fire Marshal's Office, whose jurisdiction and assistance should have been invoked, along with other State agencies, in the first instance by the Defendant, Archibeque, and the Department of Public Safety. These several acts and omissions of these Defendants were a proximate contributory cause of the injury and death of Plaintiff's decedent and the damages to his estate, and to his statutory beneficiaries.

4. This claim is stated under the Tort Claims Act against these Defendants, as, respectively, a law enforcement officer and employee of a law enforcement agency of the Department of Public Safety, his employer, under the doctrine of respondeat superior. Both officer and agency had actual notice of facts last, and next pleaded, comprising the claims against all the other Defendants.

Defendants moved for summary judgment. They argued that even if they were negligent, Plaintiff's decedent was not a foreseeable victim and, in the alternative, that his use of a cutting tool on the roof of the trailer was an independent intervening cause as a matter of law. The Department also moved for summary judgment on the ground that it had not received timely notice of the claim. The trial court denied both motions. Tri–State settled with Plaintiff prior to trial; she presented her case against Hercules and Defendants to the jury. At the close of her evidence, Defendants moved for a directed verdict on grounds offered in support of their motions for summary judgment and on the basis that the Tort Claims Act did not contain a relevant waiver of immunity. The court agreed that there was no relevant waiver of immunity and dismissed the claims made against Defendants. At the conclusion of all the evidence, the jury found Hercules negligent and awarded Plaintiff damages. By special verdict, the jury attributed three percent of fault to Archibeque and twenty percent of fault to the Department.

## II.

## DISCUSSION.

At oral argument, Plaintiff indicated that Archibeque should not have allowed the trailer to proceed to Alamogordo with broken cartons and spilled powder on board, but rather should have notified Hercules or Tri–State and required their assistance in cleaning up at the site. This seems to be a claim that Archibeque failed to exercise ordinary care in supervising clean-up at the site. Further, Plaintiff suggested at oral argument that Archibeque or Walz should have notified the Environmental Improvement Division (Division) and obtained its assistance. This seems to be a claim that there was a breach of a statutory duty, either at the site or later in Alamogordo. Finally, Plaintiff argued in her supplemental brief that Walz negligently supervised Archibeque. This theory is related to the

first, in that Plaintiff essentially argues that Walz's acts or omissions caused or contributed to Archibeque's negligence at the site.

Plaintiff primarily relies on Section 74–4B–5(1) to establish a deprivation of statutory right by a law enforcement officer resulting in injury, for which Section 41–4–12 waives immunity, and (2) as evidence of supervisory responsibilities for the operation or maintenance of a vehicle or machinery in order to argue that Defendants' acts are within the waiver of immunity provided by Section 41–4–5 or Section 41–4–6. *Cf. Romero v. State*, 112 N.M. 332, 815 P.2d 628 (1991) (New Mexico State Highway Department's supervisory responsibility may include supervising the county's daily maintenance of a roadway, thus bringing the department's acts under the waiver of immunity contemplated in NMSA 1978, Section 41–4–11(A) (Repl.Pamp.1989)). She also argues that NMSA 1978, Section 41–2–1 (Repl.Pamp.1989) (the Wrongful Death Act) and Article II, Section 4 of the New Mexico Constitution (guaranteeing the inherent rights of life, property and happiness) provide a basis for waiver of immunity in that violations of these provisions amount to a "deprivation of * * * rights * * * secured by the constitution and laws of * * * New Mexico" within the meaning of Section 41–4–12. She also argues that NMSA 1978, Section 29–1–1 (Repl.Pamp.1990) (declaring the duty of every peace officer to investigate all violations of criminal laws) and NMSA 1978, Section 29–2–18(C) (Repl.Pamp.1990) (charging state police with enforcement of all laws regulating the use of highways) provide a basis for waiver of immunity in that violations of these provisions amount to a deprivation of "rights * * * secured by * * * laws of * * * New Mexico" within the meaning of Section 41–4–12.

We do not believe the complaint states a claim for negligent supervision or that the evidence introduced at trial would support a conclusion that the complaint was amended by implication under SCRA 1986, 1–

015(B) to include such a claim. However, in addressing Plaintiff's other theories, we also answer this one.

We now discuss the relevance of the three sections of the Tort Claims Act on which Plaintiff has relied. We begin with Section 41–4–12.

## SECTION 41–4–12.

The Tort Claims Act provides, in Section 41–4–12, a waiver of immunity for certain conduct of law enforcement officers. The Tort Claims Act provides:

> The immunity granted pursuant to Subsection A of Section 41–4–4 NMSA 1978 does not apply to liability for personal injury, bodily injury, wrongful death or property damage resulting from assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, defamation of character, violation of property rights or deprivation of any rights, privileges or immunities secured by the constitution and laws of the United States or New Mexico when caused by law enforcement officers while acting within the scope of their duties.

*Id.*

■ Plaintiff's negligence theories arise out of the first portion of Section 41–4–12 and those cases interpreting it in which the appellate courts have recognized a waiver of immunity when negligent acts of a police officer have resulted in one of the specifically enumerated intentional torts listed. *See Methola v. County of Eddy*, 95 N.M. 329, 333, 622 P.2d 234, 238 (1980). She suggests that releasing the trailer in its damaged condition for travel to Alamogordo was the equivalent of a battery that resulted in death. The analogy is unpersuasive.

The harm immediately resulting in death was clearly an accident rather than a battery. Archibeque's decisions at the accident site do not support an inference that he intended "to engage in unlawful conduct

that invades the protected interests of others." *California First Bank v. State,* 111 N.M. 64, 74, 801 P.2d 646, 656 n. 6 (1990). Thus, there is no basis for treating his conduct as an intentional tort. *See id.* We conclude there is no specified tort within the meaning of the portion of Section 41–4–12 that was interpreted and applied in *Methola.*

■ While this court has recently held that Section 41–4–12 of the Tort Claims Act does not provide immunity to supervisory law enforcement officers who negligently train or supervise subordinates, *McDermitt v. Corrections Corp.,* 112 N.M. 247, 814 P.2d 115 (Ct.App.1991); *Ortiz v. New Mexico State Police,* 112 N.M. 249, 814 P.2d 117 (Ct.App.1991), we emphasized that the negligence complained of must cause a specified tort or violation of rights; immunity is not waived for negligence standing alone. Our supreme court applied the same analysis to Section 41–4–12 in *Bober v. New Mexico State Fair,* 111 N.M. 644, 808 P.2d 614 (1991). Justice Montgomery noted that while that court has held that Section 41–4–12 waived immunity for negligence of a law enforcement officer or agency that caused one of the listed torts, "no case has held that simple negligence in the performance of a law enforcement officer's duty amounts to commission of one of the torts listed in the section." *Id.* at 654, 808 P.2d at 624.

We conclude that Plaintiff's negligence theories based on *Methola* are not supported by our case law. Her claim is for personal injury resulting from negligence, and thus does not fall within the first portion of Section 41–4–12.

■ Plaintiff also argues that Defendants' acts fall under the waiver of immunity for injuries resulting from the "deprivation of any rights * * * secured by the constitution and laws of the United States or New Mexico" found in Section 41–4–12. This theory, based on a breach of statutory duty, arises out of the latter portion of Section 41–4–12 as construed in *California*

*First Bank,* 111 N.M. at 73–75, 801 P.2d at 655–57 (discussing NMSA 1978, Section 29–1–1 (Repl.Pamp.1990) and concluding that the plaintiff in that case had alleged a cause of action based on violation of a right secured by the laws of New Mexico). Plaintiff contends that Defendants' failure to notify the Division deprived her decedent of a right to have certain laws enforced, a right secured by statute or constitutional provision. *See* NMSA 1978, §§ 29–1–1, 29–2–18 (Repl.Pamp.1990); *see also* N.M. Const., art. II, § 4.

Plaintiff's reliance on the wrongful death statute and the state constitution is misplaced. If we were to base a waiver of immunity on these provisions, the exceptions thus created would eliminate the principle of sovereign immunity. We do not think that can have been the legislature's intent in enacting Section 41–4–12. Plaintiff has not cited any specific law concerning the use of highways that was not enforced other than Section 74–4B–5. We will discuss Section 74–4B–5 in greater detail.

After reviewing the evidence on which Plaintiff relies, we cannot conclude that Archibeque or the center failed to enforce the EMA. Thus, we need not discuss the issue of whether Section 74–4B–5 secures a right or rights "for the violation of which Section 41–4–12 provides an independent waiver of immunity." *Cf. California First Bank v. State,* 111 N.M. at 73–74, 801 P.2d at 655–56 (issue "of whether Section 29–1–1 secures such a right is squarely presented"). We note, however, that the EMA states: "Nothing in the Emergency Management Act shall be construed as a waiver or alteration of the immunity from liability granted under the Tort Claims Act * * *." NMSA 1978, § 74–4B–4(C) (Repl.Pamp.1990).

Archibeque's only statutory obligation under the EMA was to notify the state police emergency response center, and it is undisputed that he did so. *See* § 74–4B–5(C). We assume but need not decide that he had a general supervisory role over the

accident site, and that if he breached that duty, it would have been for the jury to decide whether his actions or omissions were the proximate cause of the injuries suffered in Alamogordo. We do not think the evidence Plaintiff presented at trial would have supported a finding that Archibeque failed to perform a general supervisory role.

■ We also do not think that Plaintiff established that the state police emergency response center failed to comply with the EMA. The EMA states that the center must notify the appropriate responsible state agency. *See* § 74–4B–5(C)(3). On these facts, where the material spilled was flammable, the EMA indicates that either the Division or the state fire marshal's office would have been a "responsible state agency." *See* § 74–4B–5(D)(2), (3); *see also* NMSA 1978, § 74–4B–3(H), (I) (Repl.Pamp.1990). The same is true of the EMA as it read at the time of the accident. *See* 1986 N.M.Laws, ch. 62, § 3. Defendants have stated on appeal that the evidence showed that the marshal was notified. Plaintiff has not disputed this statement with proper references to the transcript, *see* SCRA 1986, 12–213(A)(2), (3) (Cum.Supp.1991); *State v. Reese*, 91 N.M. 76, 570 P.2d 614 (Ct.App.1977), and we assume its truth.

If we are correct in construing the EMA to have permitted the center to notify either the Division or the marshal, Plaintiff failed to prove the statutory violation on which she relied. Under these circumstances, the trial court did not err in directing a verdict for Defendants, because there was an insufficient showing that there had been a breach of the statutory duty on which this theory rests.

Even if we assume that the center should have notified the Division, however, we do not think the decision to direct a verdict for Defendants was error. We believe Plaintiff's case included insufficient evidence that the Division had not been notified, or that if notified, the Division would have done anything other than what was done. Walz was never asked whom she notified, and there was no evidence regarding what the Division would have done upon notification. Under these circumstances, we think the trial court properly directed a verdict for Defendants for lack of sufficient evidence of a causal connection between the Department's omission and the accident that occurred, as well as for lack of evidence that there had been a breach of statutory duty.

For these reasons, we conclude that Plaintiff did not succeed in producing sufficient evidence to support a conclusion that her claim lay within the waiver of immunity provided by Section 41–4–12. The trial court did not err in concluding that section was not applicable.

## *SECTIONS 41–4–5 AND –6.*

■ The pertinent language of Section 41–4–5 waives immunity for the negligence of public employees "while acting within the scope of their duties in the operation or maintenance of any motor vehicle, aircraft or watercraft." Plaintiff appears to argue that in failing to ensure that the damaged trailer was disposed of properly, Archibeque negligently maintained a vehicle. However, the trailer was privately owned, and its owner authorized its repair and apparently selected the party to make the repairs. The activity on which Plaintiff's claim appears to depend is the trailer's removal from a public highway in a particular condition, rather than its subsequent repair. Plaintiff's claim is therefore more analogous to a claim of negligent inspection or supervision than a claim of negligent maintenance.

As we explained in *Armijo v. Department of Health & Environment*, 108 N.M. 616, 618, 775 P.2d 1333, 1335 (Ct.App.1989):

> [T]he term 'maintenance' does not permit us to recognize liability for all activities licensed or inspected by state agencies. 'The licensing scheme is too pervasive to extend such liability to the state. Impos-

ing such liability would circumvent the very grant of immunity provided by the Tort Claims Act, subject to the specific waivers of immunity.' [Citation omitted.]

*Id.* (quoting *Martinez v. Kaune Corp.*, 106 N.M. 489, 492, 745 P.2d 714, 717 (Ct.App. 1987)). We think that the use of the words "operation" and "maintenance" in Section 41–4–5 indicates an intent not to extend liability to all activities supervised or inspected by the state. *Cf. Armijo v. Department of Health & Env't* (Health and Environment Department's regulation of community mental health facility was not "operation" of the facility within meaning of NMSA 1978, Sections 41–4–9 and –10 (Repl.1986 & Cum.Supp.1988)).

Although the supreme court recently determined that the New Mexico State Highway Department's supervisory responsibility may include supervising a county's daily maintenance of a roadway, thus bringing the Department's acts under the waiver of immunity contemplated in Section 41–4–11(A), *see Romero v. State*, we do not believe that analysis is applicable to this case. At issue in *Romero* was the waiver of immunity for damages " 'caused by the negligence of public employees while acting within the scope of their duties in the maintenance * * * of any * * * highway [or] roadway.' " *Romero v. State*, 112 N.M. 291, 296, 814 P.2d 1019, 1024 (Ct.App. 1991) (quoting § 41–4–11(A)). The supreme court concluded that the Highway Department's own statutory responsibilities were within the meaning of "maintenance." The court stated that "the greater supervisory responsibilities contemplated by the 1986 law included more than issuing regulations. Those responsibilities could have included supervising the county's actual day-to-day maintenance of the roadway." *Romero v. State*, 112 N.M. at 334, 815 P.2d at 630. Here, as we interpret the statutes and regulations on which Plaintiff has relied, Archibeque had a general supervisory role, which did not include repairing the damaged trailer. His actions are not

within the meaning of "maintenance" or "operation" of a vehicle as those terms are used in Section 41–4–5.

For similar reasons, the language of Section 41–4–6, which waives immunity from liability for "damages resulting from * * * the negligence of public employees while acting within the scope of their duties in the operation or maintenance of any * * * machinery [or] equipment," also is not applicable. In addition, here, the machinery that caused the injuries resulting in death was privately owned and operated. *See generally Castillo v. County of Santa Fe*, 107 N.M. 204, 205, 755 P.2d 48, 49 (1988) (Section 41–4–6's waiver of immunity includes waiver for injuries arising from an unsafe, dangerous, or defective condition of property owned and operated by the government).

We finally note that there is no evidence in the record that Plaintiff relied on Section 41–4–6 at trial. It is not mentioned in the trial court's written order granting Defendants' motion for a directed verdict and was not discussed at the hearing on the motion. Under these circumstances, even if the issue had merit, it was not preserved for review on appeal. *See* SCRA 1986, 12–216.

### III.

### CONCLUSION.

We conclude that the trial court did not err in directing a verdict for Defendants. The trial court's order is affirmed. No costs are awarded.

IT IS SO ORDERED.

HARTZ and PICKARD, JJ., concur.