862 P.2d 1238

**Esperio TORRES, Personal Representative of Estate of Armando Torres, deceased, and John Beeks, Personal Representative of the Estate of Jeren Beeks, deceased, Plaintiffs–Appellants,**

**v.**

**STATE of New Mexico, New Mexico Department of Public Safety, City of Albuquerque, Albuquerque Police Department, Robert Vanderhee, Ruth Lowe and Sam Baca, Defendants–Appellees.**

**No. 13136.**

Court of Appeals of New Mexico.

Aug. 26, 1993.

Certiorari Granted Oct. 29, 1993.

Arthur M. Solon; Turner W. Branch, Brian K. Branch, Branch Law Firm; and Cynthia A. Fry, Albuquerque, for plaintiffs-appellants.

Jeffrey J. Dempsey, Law Offices Legal Bureau/RMD, Santa Fe, for defendants-appellees State of N.M., New Mexico Dept. of Public Safety and Robert Vanderhee.

David S. Campbell, City Atty. and Judy K. Kelley, Asst. City Atty., Albuquerque, for defendants-appellees City of Albuquerque, Albuquerque Police Dept., Ruth Lowe and Sam Baca.

*OPINION*

FLORES, Judge.

Plaintiffs appeal from a district court order dismissing with prejudice their amended complaint against Defendants, State of New Mexico, New Mexico Department of Public Safety (DPS), Robert Vanderhee (Vanderhee) an employee of DPS (collectively State Defendants), the City of Albuquerque, Albuquerque Police Department (APD), Ruth Lowe (Lowe) and Sam Baca (Baca), both police officers employed by APD (collectively City Defendants). Plaintiffs raise two interrelated issues on appeal: (1) whether Defendants owed a duty to Plaintiffs' decedents, Armando Torres (Torres) and Jeren Beeks (Beeks), and (2) whether the murders of Torres and Beeks were reasonably foreseeable. We affirm the order of dismissal.

*BACKGROUND*

This case arises from the shooting deaths of Torres and Beeks. Both deaths occurred on December 1, 1988 in Universal City, California. Plaintiff Esperio Torres is the father and personal representative of the estate of Torres, and Plaintiff John Beeks is the father and personal representative of the estate of Beeks.

Plaintiffs brought an action for wrongful death, pursuant to the New Mexico Tort Claims Act, NMSA 1978, §§ 41–4–1 to –27 (Repl.Pamp.1989), claiming that as a direct and proximate result of Defendants' negligence in investigating certain killings committed in Albuquerque on November 29, 1988, Torres and Beeks were murdered in Universal City, California on December 1, 1988.

Plaintiffs filed their complaint on November 29, 1990 and their amended complaint on December 3, 1990. Defendants filed motions to dismiss the amended complaint

for failure to state a claim. On April 8, 1991, the district court granted Defendants' motions and dismissed the amended complaint with prejudice, stating that "as a matter of law, the injured parties were not foreseeable plaintiffs and the defendants owed no duty to plaintiff[s]." It is from this order of dismissal that Plaintiffs appeal.

The amended complaint alleges the following material facts: On the morning of November 29, 1988, a lone gunman killed three people in an Albuquerque bagel shop. No robbery occurred. A description of the killer was made available to the APD. Ken Schultz, then Albuquerque mayor, told Baca, then chief of police, to put as many officers as needed on the case, and he also authorized as much overtime as needed to apprehend the killer. APD informed the press that police officers were guarding the airport and train and bus stations to prevent the killer from leaving Albuquerque. The killer's description appeared in the news media that same day.

On the afternoon of November 29, an employee of an Albuquerque gun shop, the Gun Room, telephoned Defendant DPS and spoke to Vanderhee. He informed Vanderhee that a man matching the killer's description had purchased a .38 caliber handgun at the gun shop on November 28, 1988. He also gave Vanderhee the suspect's name and address: Nathan Trupp (Trupp), Shalako Apartments, 12899 Central, NE, Albuquerque, New Mexico. Vanderhee telephoned APD and attempted to speak to Sergeant Desi Garcia (Garcia), Vanderhee's liaison at APD. Garcia was not in, and Vanderhee attempted to speak to Lowe, who was in charge of the investigation of the bagel shop killings. Lowe had left for the day, so Vanderhee left a message for her and went home. He did nothing further that day to follow up on the information he received. Lowe received Vanderhee's message during the evening of November 29 and tried to reach him at his office. Vanderhee had already gone home.

On the morning following the killings, November 30, 1988, at approximately 8:30 a.m., Vanderhee telephoned either Garcia or Lowe and relayed the information he had received from the gun shop employee regarding Trupp. That same morning before 9:00 a.m., an Albuquerque taxi driver informed Lowe and Vanderhee that on November 28, 1988, he had driven Trupp to several Albuquerque gun shops and to do target shooting in the Sandia Mountain foothills. The taxi driver gave Lowe and Vanderhee a description of Trupp, Trupp's address, a summary of Trupp's activities on November 28, including the purchase of a handgun at the Gun Room, and the opinion that Trupp seemed mentally unstable. In this regard, the amended complaint further alleges that Trupp was suffering a severe mental disorder, including having delusions and hearing non-existent voices, from November 28, 1988, until the deaths of Torres and Beeks on December 1, 1988.

Thereafter, at approximately 10:15 a.m. on November 30, APD officers arrived at Trupp's apartment complex. The officers kept a watch on Trupp's apartment until approximately 1:30 p.m., when they forced their way in and found that Trupp was gone. After they discovered Trupp gone, APD stationed police officers at the airport and at the train and bus depots.

Subsequent facts suggested that Trupp had been the person who killed the victims in the Albuquerque bagel shop on November 29, 1988. Trupp had spent the night of November 29 at his apartment, and had stayed there until approximately 9:00 a.m. on November 30, 1988 when he paid his rent. Trupp left Albuquerque on November 30 at approximately 12:30 p.m., on a Greyhound bus, and arrived in Los Angeles, California on December 1, 1988. That same day, at approximately 6:45 p.m. (New Mexico time) Trupp shot and killed Torres and Beeks, security guards at Universal Studios in Universal City, California, with the same handgun he had purchased at the Gun Room and used in the bagel shop killings in Albuquerque on November 29, 1988.

Plaintiff's amended complaint also alleged that the APD never requested an interstate warrant from the Federal Bureau of Investigation (FBI) for Trupp; nor

requested the FBI to become involved in the hunt for Trupp; nor notified any out-of-state law enforcement authorities of the bagel shop killings or the fact that Trupp had not been apprehended.

## ISSUE CONCERNING DUTY

Plaintiffs argue that the district court erred in dismissing their amended complaint and determining that, as a matter of law, the murders of Torres and Beeks were not foreseeable and that Defendants owed no duty to Torres and Beeks.

Defendants do not argue that they are immune from suit under the Tort Claims Act; rather their position is that as a matter of policy, based on statutes and case precedent, the risk of harm to Plaintiffs was so remote that Defendants owed no duty to Plaintiffs.

In support of their position that Defendants owed a duty to Torres and Beeks, as members of the public at risk of injury by Trupp, Plaintiffs argue, citing *Schear v. Board of County Comm'rs*, 101 N.M. 671, 687 P.2d 728 (1984), that Defendants as law enforcement officers have a duty to the general public to act reasonably for the safety of its members. Specifically, Plaintiffs contend that Defendants had the duty to investigate the murders committed by Trupp and to take reasonable steps to apprehend Trupp so as to prevent additional harm to members of the public, even though the officers may not know the specific identity of potential plaintiffs.

Plaintiffs further argue that pursuant to NMSA 1978, Section 29-1-1 (Repl. Pamp.1990), Defendants owed the general public a duty to investigate violations of the criminal law. This included a duty to reasonably investigate the bagel shop murders, and when provided with information casting suspicion on Trupp, the duty to apprehend Trupp. Plaintiffs claim this duty extended to Torres and Beeks due to the "foreseeability of risk of injury" to the public if Defendants failed to apprehend Trupp. Plaintiffs also contend that the fact that Torres and Beeks lived in California instead of New Mexico did not abrogate the duty owing to Torres and Beeks from Defendants.

Responding to Plaintiff's arguments, Defendants contend the district court properly determined that Defendants did not breach a duty of care to Torres and Beeks because as a matter of policy, based on statutes and case precedent, the risk of harm to Torres and Beeks was too remote to give rise to a duty. Defendants point to a number of statutes which they contend evinces a legislative intent to limit the liability of law enforcement officers to the areas wherein they have jurisdiction or authority to act. Section 29-1-1 is part of the chapter on law enforcement and therefore should be considered in the context of other sections pertaining to law enforcement. NMSA 1978, Sections 29-1-3 and -4 (Repl. Pamp.1990) impose duties on peace officers to arrest, detain, and transport escaped prisoners who are found within the boundaries of the officer's county, precinct, or state. Municipal police officers are obligated to pursue, arrest, or apprehend any person fleeing from justice or in the act of violating the laws of the state or ordinances of the municipality within the limits of the municipality. NMSA 1978, § 3-13-2(A)(4)(c) & (d) (Cum.Supp.1992). City Defendants argue that based on these statutes pertaining to municipal law enforcement officers, the legislature's intent in adopting these statutes was to limit the scope of the officers' authority to areas within the city limits, and in no case could such authority be extended beyond the boundaries of this state.

■ In furtherance of their position that liability should be denied for injuries which occur outside of the state of New Mexico, Defendants cite *Wittkowski v. State*, 103 N.M. 526, 710 P.2d 93 (Ct.App.), *cert. quashed*, 103 N.M. 446, 708 P.2d 1047 (1985), *overruled on other grounds by Silva v. State*, 106 N.M. 472, 477, 745 P.2d 380, 385 (1987). *Wittkowski* held that no duty existed on the part of the state to individuals who were killed in Colorado by escaped prisoners from the New Mexico State Penitentiary. This Court further determined that neither Section 29-1-3 nor Section 29-1-4 required the New Mexico

officers to notify the Colorado officials of the escape. We disagree with Defendants' arguments that the concept of duty can be automatically confined to a geographic area. Instead, the scope of duty must be determined under applicable law and a case-by-case analysis. Once a duty has been established, the scope of that duty is determined by the foreseeability of the injury, and not by reference to geographical boundaries. *Calkins v. Cox Estates*, 110 N.M. 59, 65, 792 P.2d 36, 42 (1990).

Because we are reviewing dismissal under SCRA 1986, 1–012(B)(6) (Repl.1992), failure to state a claim, we must accept as true the factual allegations made in the amended complaint. *See Fasulo v. State Farm Mut. Auto. Ins. Co.*, 108 N.M. 807, 808, 780 P.2d 633, 634 (1989).

■ Applying the above authorities to the matters alleged in Plaintiffs' amended complaint, we conclude that the district court correctly determined that Defendants did not breach either a statutory or a common-law duty owing to Torres and Beeks. *See Calkins*, 110 N.M. at 62 n. 1, 792 P.2d at 39 n. 1; *see also Narney v. Daniels*, 115 N.M. 41, 51, 846 P.2d 347, 357 (Ct.App. 1992), *cert. denied*, 114 N.M. 720, 845 P.2d 814 (1993). Although Defendants had a statutory duty to investigate the killings and act on the information received under Section 29–1–1, and a duty to exercise a level of care consistent with reasonably prudent and qualified law enforcement officers, *Cross v. City of Clovis*, 107 N.M. 251, 253, 755 P.2d 589, 591 (1988), we conclude that Defendants cannot be held to have breached a duty owing to Torres and Beeks. Here, Plaintiffs' amended complaint indicates that Defendants were investigating the prior bagel shop killings and were seeking to confirm the identity of and to apprehend the alleged perpetrator. The gravamen of Plaintiffs' amended complaint alleges that Defendants had a duty to have taken faster action.

■ Our Supreme Court has rejected the "public duty-special duty" rule in cases involving suits against the state or municipal governments alleging negligence on the part of law enforcement officers. *See*

*Schear*, 101 N.M. at 673, 687 P.2d at 730; *see also California First Bank v. State*, 111 N.M. 64, 71, 801 P.2d 646, 653 (1990). *See generally* John H. Derrick, Annotation, *Modern Status of Rule Excusing Governmental Unit from Tort Liability on Theory that Only General, Not Particular, Duty was Owed Under Circumstances*, 38 A.L.R.4th 1194 (1985); Note, *Police Liability for Negligent Failure to Prevent Crime*, 94 Harv.L.Rev. 821, 825–27 (1981). Rejection of this rule, however, does not give rise to the existence of a duty for failing to promptly solve a reported crime or apprehend a suspect, where the police are actively pursuing leads in the case and seeking to arrest a suspect. In this respect, we recognize Defendants' limited police resources. The fact that hindsight may reveal that a different course of action, if it had been implemented by Defendants, may have brought about Trupp's speedier apprehension does not, in the context of the present case, constitute a breach of duty on the part of Defendants.

As observed by our Supreme Court in *Calkins*, 110 N.M. at 62, 792 P.2d at 39, the court must determine as a matter of law whether a particular defendant owes a duty to a particular plaintiff. Inquiry into the existence of duty is a question of policy determined on a case-by-case basis, having reference to legal precedent, statutes, and other applicable legal principles. *Id.* As observed by Justice Baca in *Calkins*, "The determination of duty in any given situation involves an analysis of the relationship of the parties, the plaintiff's injured interests and the defendant's conduct; it is essentially a policy decision based on these factors...." *Id.* at 63, 792 P.2d at 40.

■ Although the issue of whether a defendant has breached a duty is generally a fact question to be determined by the jury, *see Bober v. New Mexico State Fair*, 111 N.M. 644, 650, 808 P.2d 614, 620 (1991), it becomes a question of law where no reasonable fact finder could conclude that a breach of duty has occurred. *Cf. Cross*, 107 N.M. at 255, 755 P.2d at 593 (considered whether reasonable fact finder could find breach of law enforcement officer's duty to use ordinary care). We are unwill-

ing to read into the statutory duty to investigate, or the common-law duty owing under *Cross,* a requirement that law enforcement officers are liable for failing promptly to investigate and solve every reported homicide case. Such requirement is unrealistic in light of rising criminal activity and limited public resources. As our Supreme Court observed in *Cross,* 107 N.M. at 254, 755 P.2d at 592, the fact that hindsight reveals a safer and better course of action is not the issue to be decided, but, rather, whether the action actually taken by Defendants conforms to the standard of care of a reasonably prudent officer. Plaintiffs have not cited to any cases in other jurisdictions that have shown the existence of a duty under similar circumstances, and we are aware of none.

## CONCLUSION

Because we have determined that the district court correctly concluded that Defendants did not violate a duty owing to Plaintiff's decedents, we need not address the other issue raised by Plaintiffs. We affirm the district court's order dismissing Plaintiff's amended complaint.

IT IS SO ORDERED.

DONNELLY and CHAVEZ, JJ., concur.